IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:25-cv-03927-SKC

ATLANTIS ADAPT,
DAWN RUSSELL, and
CLAUDIA FOLSKA,

    Plaintiffs,

v.

REGIONAL TRANSPORTATION DISTRICT,

    Defendant.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION (DKT. 2)

Before the Court is Plaintiffs' Motion for Preliminary Injunction (Dkt. 2). The Court has determined that an evidentiary hearing will not materially assist in ruling on the Motion. After consideration of the briefing and evidence, the Court has determined that Plaintiffs have not met their burden to prove a substantial likelihood of success on the merits. Accordingly, for the reasons shared below, Plaintiffs' Motion for Preliminary Injunction is DENIED.

### A. FACTS PERTINENT TO THE MOTION

The Court's jurisdiction arises under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Plaintiff Atlantis ADAPT is an organization based in Colorado whose members are

individuals with disabilities who access the services of Defendant Regional Transportation District (RTD). Dkt. 1, ¶12. Plaintiffs Dawn Russell and Claudia Folska are qualified disabled individuals eligible for services provided by Defendant.[1] *Id.* at ¶¶13-14. Plaintiffs bring claims for violations of Title II of the Americans with Disabilities Act (ADA) and Colorado's state law equivalent (CADA). *Id.* at ¶¶77-95. Plaintiffs also seek a declaration pursuant to the Colorado Uniform Declaratory Judgments Law that Defendant is violating the plain language of Ballot Measure 7A. *Id.* at ¶¶96-99.

Defendant RTD "provides bus, rail, and paratransit services in all or part of eight counties and more than 40 municipalities via its 126 bus routes, six light rail lines, four commuter rail lines, and paratransit mobility options."[2] Dkt. 16, p.1. Defendant is required to comply with the ADA, and as such, all bus and rail fixed route services are accessible to individuals with disabilities. *Id.* at p.2. In addition, the ADA requires Defendant provide paratransit services to individuals with disabilities that are complementary to its fixed route services. *See* 42 U.S.C. § 12143(a). "Complementary" means a service that "acts as a 'safety net' for individuals with disabilities who cannot use the fixed route system." 49 C.F.R. § 37, app. D.

---

[1] Defendant does not dispute that any Plaintiff is a qualified individual with a disability.

[2] "Paratransit means comparable transportation service required by the ADA for individuals with disabilities who are unable to use fixed route transportation systems." 49 C.F.R. § 37.3.

2

Federal regulations implement the ADA and set forth certain criteria that public entities must adhere to. *See id.* at § 37.1. As such, Defendant is required to provide paratransit service to origins and destinations within three-fourths of a mile on each side of a fixed route. *Id.* at § 37.131(a)(1). The paratransit service must be available during the same hours as the fixed route service. *Id.* at § 37.131(e). The fare for a paratransit service "shall not exceed twice the fare that would be charged to an individual paying full fare . . . on the entity's fixed route system." *Id.* at § 37.131(c).

These are minimum requirements. Public entities "may provide complementary paratransit service to ADA paratransit eligible individuals exceeding that provided for" in the above discussed sections. *Id.* at § 37.131(g). "For example, no one is precluded from offering service in a larger service area, during greater hours than the fixed route system, or without charge." *Id.* at app. D. However, because the additional services are optional, "transit agencies may charge higher fares for premium service trips . . . [and] [t]he exact fare for this extra service is a local decision." *See* Americans with Disabilities Act (ADA): Guidance, 2015 WL 6037995, at *179.[3]

Defendant currently provides two paratransit services for disabled customers, the Access-a-Ride (AaR) program and the Access-on-Demand (AoD) program. Dkt. 1, ¶¶26, 30. AaR is Defendant's standard complementary paratransit service required

---

[3] "Premium service" trips include same-day trips and will-call trips. *See* Americans with Disabilities Act (ADA): Guidance, 2015 WL 6037995, at *179. Defendant's AoD service is a premium service.

3

by the ADA. Dkt. 16, p.6. It "offers curbside and door-to-door service, as well as subscriptions for customers who make regular trips to the same destination" and is operated during the same days and hours as Defendant's fixed route bus service. *Id.* at p.7. It costs $4.50 for a one-way ride. *Id.* AoD is an alternative paratransit service to AaR in which disabled customers can use rideshare companies for transportation. Dkt. 1, ¶¶27-33. The fare is $0 and qualified users can order rides up to 60 times per month. *Id.* at ¶¶31, 33. Defendant also provides a $25 subsidy towards the cost of each AoD ride. *Id.* at ¶33.

On September 30, 2025, the RTD Board approved certain changes to AoD, effective January 1, 2025, including:

1. Increasing the fare from $0 to $4.50 per ride;
2. Decreasing the subsidy from $25 to $20; and
3. No longer offering the service between 1:30 a.m. and 3:30 a.m.

*Id.* at ¶53.

It is these changes that form the basis of Plaintiffs' claims. Plaintiffs argue that Defendant's cuts to AoD will disparately impact individuals with disabilities in violation of the ADA and CADA. Dkt. 2, p.10.

In addition, Plaintiffs argue that "[b]y cutting services and imposing increased costs for Access-on-Demand onto RTD users with disabilities, RTD is directly violating the plain language of Ballot Measure 7A." *Id.* at p.12. Ballot Measure 7A was adopted in 2024 and provides that Defendant can keep its revenue to provide vital services, including "repairing and improving rail lines, buses, bus stops and

4

stations and other infrastructure to preserve the public's investment in transit," and "maintaining the availability of services for people with disabilities," among other things. *See* Dkt. 16-4, p.3.

### B. LEGAL PRINCIPLES

Injunctive relief is an extraordinary remedy which should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Granting such "drastic relief" is the exception rather than the rule. *United States ex rel Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989); *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). In the Tenth Circuit, a party requesting injunctive relief must clearly establish (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction would not be adverse to the public interest; and (4) a substantial likelihood of success on the merits. *Enter. Mgmt. Consultants, Inc.*, 883 F.2d at 889.

If the injunction sought is of the "disfavored" variety, the moving party must make an especially "strong showing" that the likelihood of success and balance of harms weigh in its favor. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019); *see also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). Plaintiff argues that the

5

injunction is not disfavored. Dkt. 2, p.9 n.5. Defendant does not rebut this contention, and the Court agrees with Plaintiff that the injunction sought here is not of the disfavored variety.

## C. ANALYSIS & FINDINGS

**1.   There is Not a Substantial Likelihood of Success on the Merits[4]**

   **a.   ADA and CADA Claims**

The Plaintiffs argue they are likely to succeed on the merits of all of their claims. The Court will first analyze the ADA and CADA claims, then turn to the claim brought pursuant to the Colorado Uniform Declaratory Judgments Law.

To succeed on a claim under Title II of the ADA[5], a plaintiff must prove that (1) they are a qualified individual with a disability, (2) who was either excluded from

---

[4] Because the Court finds that there is not a substantial likelihood of success on the merits, the Court need not analyze the other preliminary injunction factors. The Court notes, however, that Plaintiffs have also not shown they suffered irreparable harm considering their timing in filing this case. Plaintiffs admit that Defendant approved the changes they now dispute on September 30, 2025. Dkt. 2, p.5. Yet, Plaintiffs did not file their Motion until December 7, 2025, over two months later and less than one month before the changes are to take effect. "[D]elay in seeking injunctive relied cuts against finding irreparable injury." *See Slusser v. Mountain West Conference*, No. 1:24-cv-03155-SKC-MDB, 2024 WL 4876221, at *7 (D. Colo. Nov. 25, 2024) (quoting *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543-44 (10th Cir. 1994)). And while the Court certainly sympathizes with Plaintiffs and acknowledges that an increase in price and reduction in service hours is not without harm, Plaintiffs still have access to paratransit services; the inconvenience of the price increase does not rise to the level of legally irreparable harm. *See Hassan v. Slater*, 41 F.Supp.2d 343, 349 (E.D.N.Y. 1999) (no irreparable harm where visually impaired plaintiff had to walk several more miles to the next closest transit station after transit authority closed the station nearest him).
[5] CADA claims are analyzed using the same standards and defenses as ADA claims. *See* Colo. Rev. Stat. § 24-34-802(4).

6

participation in or denied the benefits of some public entity's services, programs, or activities, or the public entity otherwise discriminated against the plaintiff, and (3) the exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Trujillo v. Rio Arriba Cnty. ex rel Rio Arriba Cnty. Sheriff's Dep't*, 319 F.R.D. 571, 609-10 (D.N.M. 2016) (citing *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007)). A plaintiff can establish their claim in one of three ways: (1) intentional discrimination, (2) disparate impact, and (3) failure to make a reasonable accommodation. *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (citing *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 919 (10th Cir. 2012)). In this case Plaintiffs have only alleged disparate impact. *See* Dkt. 2, pp.9-10.

A disparate impact claim does not require proof of intentional discrimination. *Cinnamon Hills*, 813 F.3d at 922 (citing *Mountain Side Mobile Estates P'ship v. Sec'y of Hous. & Urban Dev.*, 56 F.3d 1243, 1252 (10th Cir. 1995)). But Plaintiffs must show that "a specific policy caused a significant disparate effect on a protected group." *Id.* (quoting *Reinhart v. Lincoln Cnty.*, 482 F.3d 1225, 1229 (10th Cir. 2007)). Disparate impact is generally proven by statistical evidence involving the appropriate comparables "necessary to create a reasonable inference that any disparate effect identified was caused by the challenged policy and not other causal factors." *Id.* (citing *Mountain Side Mobile Estates*, 56 F.3d at 1253).

7

Plaintiffs argue that the cuts to AoD will disparately impact individuals with disabilities because Defendant "is imposing fare increases and service decreases [for AoD], while RTD has cut fares and increased services for its other programs and services that serve primarily individuals without disabilities."[6] Dkt. 2, p.10. But it appears that Plaintiffs are making their disparate-impact arguments in a vacuum without regard for the regulatory scheme Defendant works within. As discussed above, Defendant is required by the ADA and its implementing regulations to maintain paratransit services for individuals with disabilities, which it does through the AaR program. Plaintiffs do not challenge that program, effectively conceding Defendant's lawful compliance with the ADA. What Plaintiffs do challenge—Defendant's changes to the AoD program—is a program not required under the ADA. Thus, none of the changes Defendant has made to AoD affects its compliance with federal law.

In a similar case in the Eastern District of New York, the court noted the unnatural fit between the plaintiffs' disparate impact argument and the actions taken by the defendant. *See Abrahams v. MTA Long Island Bus*, No. 10-CV-1535 (SJF)(ARL), 2010 WL 2134288, at *5 (E.D.N.Y. May 25, 2010). It stated: "Plaintiffs do not allege that Defendant has a facially neutral policy or procedure that has a

---

[6] In their Reply, Plaintiffs discuss Defendant's budget at length and argue that "RTD's claim that budgetary concerns are driving cuts to Access-on-Demand does not pass muster." Dkt. 19, p.10. The Court does not believe the budget discussions are relevant to the likelihood of success on the merits.

8

disproportionate impact on disabled persons. Instead, they challenge a single action taken by Defendant: the budget cuts resulting in a reduction of Able-Ride service." *Id.* That court further found that "[a]ccepting Plaintiffs [sic] argument would effectively [ ] extend the ADA's paratransit requirements to include any and all services that have ever been provided, thus penalizing Defendant for voluntarily providing additional paratransit services in the past, and discouraging other public entities from going beyond the requirements of the ADA." *Id.* at *6.

The same is true in this case. Defendant's changes to the AoD do not violate the ADA and Plaintiffs have failed to identify some facially neutral policy or procedure that has a disproportionate impact on disabled persons. They instead point only to Defendant's single action of making unflattering changes to an optional program the law does not require Defendant to provide in the first instance. While it might now be more inconvenient or expensive for individuals with disabilities to use Defendant's AoD services, the "regulations implementing the ADA 'do not contemplate for perfect service' for the disabled." *Boose v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 587 F.3d 997, 1005 (9th Cir. 2009) (quoting *Midgett v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 254 F.3d 846, 849 (9th Cir. 2001)). For these reasons, Plaintiffs have not shown that the proposed changes to AoD will have a disparate impact on individuals with disabilities. Thus, there is not a substantial likelihood of success on the merits of Plaintiffs' ADA or CADA claims.

### b.    Ballot Measure 7A

The Court next turns to the declaratory judgment claim. Plaintiffs contend they are likely to succeed on the merits because cutting services and increasing costs for AoD directly violates the plain language of Ballot Measure 7A. Dkt. 2, p.12. The Court disagrees.

Courts "apply general principles of statutory interpretation to ballot initiatives," and if the language of the ballot initiative is unambiguous, the court should give effect to its plain meaning. *Ams. for Prosperity v. State*, 571 P.3d 930, 935 (Colo. App. 2025) The plain language of Ballot Measure 7A permits Defendant to retain its revenue to provide "vital RTD services." *See* Dkt. 16-4, p.3. These vital services include, *but are not limited to*:

- Providing transportation choices to local residents by maintaining and growing current levels of bus, and rail services;
- Repairing and improving rail lines, buses, bus stops and stations and other infrastructure to preserve the public's investment in transit;
- *Maintaining the availability of* services for people with disabilities;
- Continuing to provide cleaner, more efficient methods of transportation other than driving on roads and highways; and
- Providing transportation services for youth 19 years of age or younger at reduced or no fares.

*Id.* (emphasis added).

There is no requirement in Ballot Measure 7A that Defendant maintain the exact services to people with disabilities that existed at the time the measure was enacted. Additionally, Defendant is not "cutting services" as Plaintiffs argue. Defendant still "maintains the availability of" the AoD service and the AaR service.

10

The plain language of Ballot Measure 7A requires Defendant "maintain" services for people with disabilities, which Defendant is doing. *See* MAINTAIN, Black's Law Dictionary (12th ed. 2024) ("To continue (something)."). Plaintiffs' argument is without merit, and they are not likely to succeed on the merits of their declaratory judgment claim.

*   *   *

For the reasons shared above, Plaintiffs' Motion for Preliminary Injunction (Dkt. 2) is DENIED.

Dated: December 29, 2025

BY THE COURT:

S. Kato Crews
United State District Judge